| Fill in this information to identify the case: |
| --- |
| United States Bankruptcy Court for the: |
| Southern District of New York |
| Case number *(if known)*: _____ Chapter 15 |

☐ Check if this is an
amended filing

## Official Form 401

# Chapter 15 Petition for Recognition of a Foreign Proceeding          12/15

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write debtor's name and case number (if known).

**1. Debtor's name**

Huy Vietnam Group Limited (in Official Liquidation)

**2. Debtor's unique identifier**

**For non-individual debtors:**

☐ Federal Employer Identification Number (EIN)   ___ ___ – ___ ___ ___ ___ ___ ___ ___

☑ Other Cayman limited company , Describe identifier reg. no. 273226 .

**For individual debtors:**

☐ Social Security number:   xxx – xx– ___ ___ ___ ___

☐ Individual Taxpayer Identification number (ITIN): 9 xx – xx – ___ ___ ___ ___

☐ Other _____ . Describe identifier _____

**3. Name of foreign representative(s)**

Cosimo Borrelli and Mitchell Mansfield

**4. Foreign proceeding in which appointment of the foreign representative(s) occurred**

FSD Cause No. 310 of 2020 (RPJ), Grand Court of the Cayman Islands

**5. Nature of the foreign proceeding**

*Check one:*

☐ Foreign main proceeding
☐ Foreign nonmain proceeding
☑ Foreign main proceeding, or in the alternative foreign nonmain proceeding

**6. Evidence of the foreign proceeding**

☑ A certified copy, translated into English, of the decision commencing the foreign proceeding and appointing the foreign representative is attached.

☐ A certificate, translated into English, from the foreign court, affirming the existence of the foreign proceeding and of the appointment of the foreign representative, is attached.

☐ Other evidence of the existence of the foreign proceeding and of the appointment of the foreign representative is described below, and relevant documentation, translated into English, is attached.

_____
_____

**7. Is this the only foreign proceeding with respect to the debtor known to the foreign representative(s)?**

☐ No. (Attach a statement identifying each country in which a foreign proceeding by, regarding, or against the debtor is pending.)

☑ Yes

| Debtor | Huy Vietnam Group Limited (in Official Liquidation) | Case number *(if known)* |
|---|---|---|
| | Name | |

**8. Others entitled to notice**

Attach a list containing the names and addresses of:

(i)  all persons or bodies authorized to administer foreign proceedings of the debtor,

(ii)  all parties to litigation pending in the United States in which the debtor is a party at the time of filing of this petition, and

(iii)  all entities against whom provisional relief is being sought under § 1519 of the Bankruptcy Code.

**9. Addresses**

Country where the debtor has the center of its main interests:

Cayman Islands

Debtor's registered office:

Strathvale House, 3rd Fl., 90 N Church St
Number         Street

30847
P.O. Box

Grand Cayman                    KY      11204
City              State/Province/Region    ZIP/Postal Code

Cayman Islands
Country

Individual debtor's habitual residence:

Number         Street

P.O. Box

City              State/Province/Region    ZIP/Postal Code

Country

Address of foreign representative(s):

Strathvale House, 3rd Fl., 90 N Church St

30847
P.O. Box

Grand Cayman                    KY      11204
City              State/Province/Region    ZIP/Postal Code

Cayman Islands
Country

**10. Debtor's website (URL)**

**11. Type of debtor**

*Check one:*

☑ Non-individual (*check one*):

    ☑ Corporation.  Attach a corporate ownership statement containing the information described in Fed. R. Bankr. P. 7007.1.

    ☐ Partnership

    ☐ Other.  Specify: _____

☐ Individual

| Debtor | Huy Vietnam Group Limited (in Official Liquidation) | Case number (if known) | |
|---|---|---|---|
| | Name | | |

**12. Why is venue proper in *this district*?**

Check one:

☑ Debtor's principal place of business or principal assets in the United States are in this district.

☐ Debtor does not have a place of business or assets in the United States, but the following action or proceeding in a federal or state court is pending against the debtor in this district:

_____.

☐ If neither box is checked, venue is consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative, because:

_____.

**13. Signature of foreign representative(s)**

I request relief in accordance with chapter 15 of title 11, United States Code.

I am the foreign representative of a debtor in a foreign proceeding, the debtor is eligible for the relief sought in this petition, and I am authorized to file this petition.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct,

✗ _____     Mitchell Mansfield
Signature of foreign representative          Printed name

Executed on    02/23/2021
               MM / DD / YYYY

✗ _____     _____
Signature of foreign representative          Printed name

Executed on    _____
               MM / DD / YYYY

**14. Signature of attorney**

✗ _____     Date    02/23/2021
Signature of Attorney for foreign representative          MM / DD / YYYY

Warren Gluck
Printed name

Holland & Knight LLP
Firm name

31 W. 52nd St.
Number        Street

New York                                          NY          10019
City                                              State       ZIP Code

(212) 513-3200                                    warren.gluck@hklaw.com
Contact phone                                     Email address

4701421                                           NY
Bar number                                        State

Warren E. Gluck, Esq.
Kathleen M. St. John, Esq. (*pro hac vice forthcoming*)
Elliot A. Magruder, Esq.
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, New York 10019
Telephone:  212-513-3200
Fax: 212-385-9010
Warren.Gluck@hklaw.com
Kathleen.StJohn@hklaw.com
Elliot.Magruder@hklaw.com

*Counsel for the Joint Official Liquidators of*
*Huy Vietnam Group Limited (in Official Liquidation)*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------

| | | |
|---|---|---|
| | : | Chapter 15 |
| In re: | : | |
| | : | Case No. 21-_____ (___) |
| HUY VIETNAM GROUP LIMITED | : | |
| (IN OFFICIAL LIQUIDATION) | : | |
| | : | |
| Debtor in a | : | |
| Foreign Proceeding.[1] | : | |
| | : | |
| | : | |

--------------------------------------------------------

## VERIFIED PETITION FOR RECOGNITION OF
## FOREIGN INSOLVENCY PROCEEDING AND RELATED RELIEF

Cosimo Borrelli and Mitchell Mansfield, in their capacity as the joint official liquidators (together, the "**Liquidators**") of Huy Vietnam Group Limited (in Official Liquidation) ("**Huy**"), a Cayman Islands limited exempted company in official liquidation under the supervision of the Grand Court of the Cayman Islands, Financial Services Division (the "**Cayman Court**" or the "**Grand Court**"), Cause No. 310 of 2020 (RPJ) (the "**Cayman Liquidation**"), pursuant to the

---

[1] Huy Vietnam Group Limited (in Official Liquidation) is a Cayman Islands limited exempted company, with registration number 273226.

1

Cayman Islands Companies Act (2021 Revision) (the "**Companies Act**") and the Companies Winding Up Rules, 2018 (the "**CWR**"), and the Supervision Order issued by the Cayman Court on December 14, 2020 (the "**Supervision Order**"), by their undersigned United States counsel, Holland & Knight LLP, respectfully submits the Official Form Petition, this Verified Petition (together, the "**Petition**"), and the accompanying Declarations of Mitchell Mansfield, dated February 23, 2021 (the "**Mansfield Decl.**") and the exhibits thereto, Warren Gluck, dated February 23, 2021 (the "**Gluck Decl.**"), and the exhibits thereto, and Liam Faulkner, dated February 24, 2021, and the exhibit thereto (the "**Faulkner Decl.**," collectively, the "**Declarations**"), for entry of an Order pursuant to chapter 15 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**"):

    (i)      recognizing the Cayman Liquidation as a foreign main proceeding under 11 U.S.C. §§ 1502, 1517(a) and (b)(1), or, in the alternative, as a foreign nonmain proceeding pursuant to 11 U.S.C. § 1517(b)(2) of the Bankruptcy Code;

    (ii)     appointing the Liquidators as Huy's foreign representatives under 11 U.S.C. §§ 101(24), 1509 and 1517(a);

    (iii)    confirming that the Liquidators have satisfied the requirements of 11 U.S.C. 1515;

    (iv)    granting automatic relief pursuant to section 1520 of the Bankruptcy Code;

    (v)     granting other and additional relief pursuant to sections 1507 and 1521(a) and (b) of the Bankruptcy Code as necessary, including authorizing the Liquidators to examine witnesses, take evidence, and seek the production of documents concerning the assets, affairs, rights and/or obligations of the Huy Group (the "**Discovery Subjects**") from financial institutions (collectively, the "**New York Banks**") located in the Southern District of New York (the "**District**") concerning (1) accounts or other property held in the United States or with a connection to the United States; and (2) U.S. Dollar-denominated wire transfers; and

    (vi)    granting such other and further relief as the Court may deem just and proper.

## I.      PRELIMINARY STATEMENT

Huy is a Cayman Islands exempted company in official liquidation that, through subsidiaries, owned and operated restaurant chains in Vietnam.  Huy is incorporated under Cayman Islands law, and throughout its existence has maintained a registered office in the Cayman Islands.

On October 19, 2020, the shareholders of Huy placed it into voluntary liquidation and appointed the Liquidators as the joint voluntary liquidators.  On December 11, 2020, Huy commenced the Cayman Liquidation by filing a petition for supervision of the voluntary liquidation by the Cayman Court (the "**Supervision Petition**").

Huy is in official liquidation in the Cayman Islands pursuant to a Supervision Order issued on December 14, 2020 by the Cayman Court.   The Supervision Order appointed the Liquidators, who direct the Cayman Liquidation primarily from their office in the Cayman Islands.  To date, the Liquidators' efforts to facilitate the Cayman Liquidation include liaising with potential creditors, notifying Cayman Islands' authorities of their appointment, holding the first meeting of Huy's contributories, and communicating with shareholders, legal advisors, and other interested parties.  The Supervision Order also specifically authorized the filing of this Petition, and, among other powers, to seek "discovery within the territorial jurisdiction in relation to the assets, affairs, rights, obligations or liabilities" of Huy and its subsidiaries (collectively, the "**Huy Group**").

The Liquidators seek discovery from New York Banks located in this District because their investigation to date has revealed that, since 2014, the founder of the Huy Group, Nhat Huy ("**Nhat**"), may have misappropriated approximately $59 million of an outside investment into Huy.  The Liquidators' investigation indicates that Nhat (and those acting on his behalf) may have accomplished the misappropriation of Huy's assets through the unauthorized conversion of intercompany debt that left more than $10 million unaccounted for, and the execution of suspicious real estate and intellectual property transactions at inflated values and involving shell companies.

3

Nhat and the Huy Group frequently transacted in U.S. Dollars, including with respect to the disbursal of the intercompany loans at issue, and to make payments directly between the Huy Group and Nhat's wife.  Moreover, Nhat owned at a minimum one investment account that held millions of U.S. Dollars and invested in U.S. equities.  The discovery from the New York Banks, which store and routinely produced the requested wire transfer information, could be integral to the Liquidators' efforts to determine Huy's asset portfolio for the benefit of all stakeholders.

As set forth below and in the Declarations, the Cayman Liquidation is a "foreign main proceeding" under Chapter 15 of the Bankruptcy Code because it is pending in the Cayman Islands where Huy maintains its center of main interests.  In the alternative, the Cayman Liquidation is a "foreign nonmain proceeding" because Huy carries out nontransitory economic activity in the Cayman Islands.  The Cayman Liquidation is consistent with, and clearly not manifestly contrary to, the public policy of the United States.  Recognition of the Cayman Liquidation under chapter 15 of the Bankruptcy Code will serve the exact purpose of its enactment by ensuring that the Cayman Liquidation continues in a fair, efficient, uninterrupted, and centralized manner with the goal of maximizing the value of Huy's assets for the benefit of all stakeholders.

Accordingly, the Liquidators respectfully request that Court grant recognition of the Cayman Liquidation as a foreign main proceeding, or in the alternative as a foreign nonmain proceeding, and granted the related discovery relief.

## II.      JURISDICTION, ELIGIBILITY, AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, as well as the Amended Standing Order of Reference dated January 31, 2012, Reference M-431, *In re Standing Order of Reference Re: Title 11*, 12 Misc. 00032 (S.D.N.Y. Feb. 2, 2012) (Preska, C.J.).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(P).

2.      Venue is proper in this District pursuant to 28 U.S.C. §§ 109(a) and 1410(1) because Huy's principal (and indeed only) assets in the United States are in New York.  Huy has an interest in funds in the amount of $25,000, deposited with Holland & Knight LLP ("**H&K**") and held by H&K in a non-interest bearing client trust account (the "**H&K Account**") located in New York, New York (the "**H&K Retainer**").  Mansfield Decl. ¶ 91.  *See, e.g., In re Olinda Star Ltd.*, 614 B.R. 28, 39 (Bankr. S.D.N.Y. 2020) ("Courts in this Circuit have held that section 109(a) can be satisfied by bank accounts in the United States, including by an undrawn retainer.") (citations omitted); *In re Ocean Rig UDW Inc.*, 570 B.R. 687, 700 (Bankr. S.D.N.Y. 2017) (finding venue when New York counsel held a debtor's retainer in a New York account); *In re U.S. Steel Can. Inc.*, 571 B.R. 600, 610 (Bankr. S.D.N.Y. 2017) ("Some courts, including this one, have held that an undrawn retainer in a United States bank account qualifies as property in satisfaction of section 109(a).").

3.      As set forth below, the persons and entities from which the Liquidators seek discovery relief are subject to the jurisdiction of the courts of the United States.

4.      The statutory predicates for the relief requested are sections 105(a), 1504, 1506, 1515, 1517, 1520, and 1521 of the Bankruptcy Code.  The Liquidators have properly commenced this case pursuant to sections 1504 and 1509(a) of the Bankruptcy Code by filing the Petition for recognition of the Cayman Liquidation under section 1515 of the Bankruptcy Code.

## III.    FACTUAL BACKGROUND

### A.      Formation, Registered Office, and Operations of the Huy Group

5.       Huy was incorporated on November 16, 2012 as a Cayman Islands limited exempted company.[2]  Mansfield Decl. ¶ 8.  The Articles of Association of Huy are governed by the law of the Cayman Islands.  *Id.*

6.       Prior to the Resolution, Huy maintained a registered office at FFP (Corporate Services) Limited ("**FFP**"), 2nd Floor, Harbour Centre, 42 North Church Street, George Town, Grand Cayman, Cayman Islands.[3]  *Id.* ¶ 9.  Upon commencement of the voluntary liquidation, the Liquidators changed the registered office of Huy to Borrelli Walsh (Cayman) Limited, Strathvale House, 3rd Floor, 90 North Church Street, George Town, Grand Cayman, Cayman Islands.[4]  *Id.* This is currently the registered office of Huy.  *Id.*

7.       Huy is the ultimate parent company of the Huy Group.  The current chain of ownership of the Huy group is as follows (Mansfield Decl. ¶ 10):

   a.   Huy Vietnam Holdings Limited ("**Huy BVI**"), a British Virgin Islands company that is wholly owned by Huy;

   b.   Huy Vietnam (Hong Kong) Limited ("**Huy Hong Kong**"), a Hong Kong company that is wholly owned by Huy BVI;

   c.   Huy Viet Nam Food Processing Company Limited ("**Huy Vietnam**"), a Vietnam company that is wholly owned by Huy Hong Kong

   d.   Cong ty TNHH Nha hang Mon Hue ("**Mon Hue**," together with Huy Vietnam, the "**Onshore Subsidiaries**"), a Vietnam company, the ownership of which is divided

---

[2] As a Cayman Islands exempted company, Huy must declare to Cayman Islands' authorities that its operations will be conducted mainly outside of the Cayman Islands or pursuant to a license to carry on business in the Cayman Islands.  *See* Faulkner Decl. ¶ 49.  That being said, subject to compliance with applicable licensing or regulatory requirements, a Cayman Islands exempted company may maintain and office in the Cayman Islands and hire staff and/or agents in the Cayman Islands to carry on of its business.  *Id.* ¶ 50.

[3] FFP is a creditor of Huy in the Cayman Liquidation.  *See* Mansfield Decl. ¶ 74.

[4] The Petition uses the term Liquidators even when referring to acts taken prior to the Supervision Order in their capacity as joint voluntary liquidators.

into: (1) 61.1% by Huy; (2) 35.6% by Huy Hong Kong; and (3) 3.3% by Huy Vietnam.

8.      The Huy Group owned and operated restaurant chains in Vietnam. The Onshore Subsidiaries operated the restaurant chains with Huy Vietnam operating central kitchens that primarily prepared and supplied food to these restaurant chains as well as other third-party customers.  Mansfield Decl. ¶ 11.

9.      Nhat founded the Huy Group and maintained day-to-day control (sometimes through agents) of the operating entities in the Huy Group.  *Id.* ¶ 12.

### B.      The Capital Investments in Huy and Equity Ownership Restructuring

10.     Between 2014-2017, Huy received an investment of roughly $75 million in exchange for preferred shares in Huy (the "**Outside Investment**") from outside investors (collectively, the "**Investor Shareholders**").  Mansfield Decl. ¶ 13.  The Investor Shareholders collectively owned roughly 43% of the preferred shares of Huy.  Nhat and three entities under his control also held a roughly 31% of the preferred shares of Huy (collectively, the "**Nhat Shareholders**").  *Id.* ¶ 14.  Seventeen outsider shareholders collectively held roughly 26% of the preferred shares of Huy.  *Id.*

11.     On March 30, 2017, Huy amended its shareholder agreement (the "**Amended Shareholders Agreement**").  Mansfield Decl. ¶ 15.  As a result, the Huy Group maintained a linear shareholding structure ordered as follows:  Huy > Huy BVI > Huy Hong Kong > Huy Vietnam > Mon Hue.  *Id.*

12.     The Amended Shareholders Agreement created a board of six directors comprised of 3 Investor Shareholders and 3 Nhat Shareholders.  Mansfield Decl. ¶ 16.  The Amended Shareholders Agreement proscribed: (1) without prior written consent of multiple Investor

Shareholders (and others), the right to "alter or vary the rights or interests of the shareholders of [Huy]"; and (2) without consent of three-fourths of the Huy board of directors, the "acquisition, merger or reorganization" of any Huy Group company "in excess of an aggregate amount which is the greater of (i) 25% of the amount budgeted amount and (ii) US $12,500,000 (or its equivalent)." *Id.* ¶ 17.

13.     Following the Outside Investment, through three intercompany Loan Agreements, Huy and Huy Hong Kong lent roughly $32 million to the Onshore Subsidiaries (the "**Intercompany Loans**"). *Id.* ¶ 18.  The Intercompany Loans comprised (*id.*):

     a.  March 1, 2017: Huy Hong Kong as lender and Huy Vietnam as borrower in respect of a convertible unsecured loan with a maximum facility limit totaling $5 million.

     b.  March 1, 2017: Huy as lender and Mon Hue as borrower in respect of a convertible unsecured loan with a maximum facility limit totaling $20 million.

     c.  August 10, 2017:  Huy Hong Kong as lender and Mon Hue as borrower in respect of a convertible unsecured loan with a maximum facility limit totaling $10 million.

**C.     Potential Improprieties Concerning the Finances and Operations of Huy**

14.     An investigation indicates that over the course of approximately five years, Nhat and the other managers of Mon Hue and Huy Vietnam (collectively, the "**Nhat Parties**") may have misappropriated nearly $59 million by transferring money to phantom shell companies for various types of non-existent "services."  Mansfield Decl. ¶ 19.

15.     In addition, the unsanctioned conversion of debt to equity in Mon Hue attempted to disguise the questionable loans and suspicious transactions by extinguishing the repayment obligation set forth in the Intercompany Loans.  *Id.*  In other words, the conversion of debt to equity effectively removed the requirement for the misappropriated funds to be repaid later.  *Id.*

16.     Notably, although certain of the transactions of the Nhat Parties were denominated in Vietnamese Dong, many of the dubious transactions were denominated in U.S. Dollars. *Id.* ¶ 20. All told, the Huy Group and Nhat Parties used at a minimum of six accounts to route significant sums in U.S. Dollars, including as conduits for payments directly from Huy Hong Kong and Huy to Nhat's wife and to an account held by or affiliated with the Nhat Parties. *Id.*

17.     Moreover, the Liquidators have obtained evidence indicating that, as of 2018 at the latest, Nhat and his wife held bank and brokerage accounts that stored investments in which U.S. Dollars was the "reporting currency" and that included investments in "Sponsored American Deposit Shares." Mansfield Decl. ¶ 21.

### 1.     Unauthorized Conversion of Intercompany Loan Proceeds

18.     In April 2019, the Investor Shareholders discovered that Nhat, in the previous month (March 2019), without the knowledge or consent of the Investor Shareholders, and arguably in breach of the Amended Shareholders Agreement, caused approximately $28 million outstanding on the Intercompany Loans to convert to an equity interest in Mon Hue. Mansfield Decl. ¶ 22. The purported conversion extinguished the repayment obligations set forth in the provisions of the Intercompany Loans. *Id.* Importantly, the purposed conversion of the loan proceeds to Mon Hue shares deprived Huy of its ultimate sole ownership of Mon Hue, and instead divided ownership of Mon Hue among Huy, Huy Hong Kong, and Huy Vietnam. *Id.* ¶ 24.

19.     The Liquidators' investigation indicates that Nhat, prior to the purported conversion of at least one of the Intercompany Loans, transferred roughly $10.2 million of the loan proceeds under the Intercompany Loans from Huy Hong Kong (as lender) to Mon Hue (as borrower). Mansfield Decl. ¶ 23. As of November 2018, this Mon Hue account held less than $500, and the Liquidators have not received any additional information concerning the transfer, including

whether Mon Hue repaid the loan proceeds to Huy Hong Kong.

**2.      Acquisition of Land Use Rights in Vietnam by the Onshore Subsidiaries**

20.      It appears that on multiple occasions, the Onshore Subsidiaries executed suspicious transactions concerning land use rights in Vietnam.  Mansfield Decl. ¶ 25.

21.      First, in 2017, without Huy's approval or authorization, Huy Vietnam acquired from Hai Son Company Limited land use rights in an industrial zone (the "**Long An Property**") in Long An Province in Vietnam (the "**Long An Transaction**").  *Id.* ¶  26.  Huy Vietnam paid roughly $14 million for the rights transferred in the Long An Transaction, which ranged from approximately 7 to 10 times the fair market value.  *Id.*  Notwithstanding Huy Vietnam serving as the putative purchaser, Mon Hue registered with the Vietnamese government as the land use owner.  *Id.* ¶ 27. The Liquidators are unaware of any commercial consideration favoring registration Mon Hue as the purchaser.  *Id.*  Without approbation of its shareholders (including Huy as the majority shareholder), and in violation of its alienation rights with respect to the property, Mon Hue transferred the use rights in the Long An Property.  *Id.*

22.      Second, also in 2017, and again without the requisite approval from Huy, Mon Hue acquired land usage rights in an industrial zone (the "**Hanoi Property**") in Hanoi, Vietnam (the "**Hanoi Transaction**").   Mansfield Decl. ¶  28. Mon Hue paid roughly $6 million for the rights transferred in the Hanoi Transaction, which constituted a range 6 to 12 times the fair market value. *Id.* ¶¶ 28-29.  Moreover, Mon Hue failed to notarize or register the transaction with the land registration agency or other governmental authorities.  *Id.* ¶ 29.

**3.      Mon Hue's Suspicious Contracts Executed without Huy's Consent**

a.      The Service Contracts

23.      Between August and November 2018, Mon Hue entered into service contracts (the

"**Service Contracts**") with 4 vendors that purported to provide construction services for kitchen equipment (the "**Vendors**"). Mansfield Decl. ¶ 30. The Amended Shareholders Agreement requires consent to such agreements, but Huy did not consent to the Service Contracts. *Id.*

24.   Pursuant to the Service Contracts, Mon Hue allegedly "advanced" roughly $26 million to the Vendors. *Id.* ¶ 31. Notably, the incorporation of 3 of the 4 vendors occurred subsequent to the date of the Service Contracts. Visits to the registered office addresses of the Vendors indicated no operational presence. *Id.*

> b.   The Brand Acquisitions

25.   Between August 2014 and May 2015, Mon Hue paid approximately $13 million to acquire trademark rights in the brands "Pho Ong Hung" (the "**Pho Hung Brand**"), "Great Banh mi" (the "**Banh Mi Brand**"), from two Vietnamese companies (the "**Brand Acquisitions**"). Mansfield Decl. ¶ 32. The Liquidators have limited information as to the payment mechanics of the purchase price. The Amended Shareholders Agreement requires consent to such agreements, but Huy did not consent to the Brand Acquisitions.

26.   Mon Hue did not register the Pho Hung Brand with the Vietnamese intellectual property authorities, thus depriving the Pho Hung Brand of protections associated with the intellectual property, such as infringement, unapproved copying, and misappropriation. *Id.* ¶ 33.

27.   Second, Mon Hue has been sued by Pho Hung Service Trading Company Limited ("**Pho Hung**"), which alleges that derivations of the trademark of the Pho Hung Brand violated the intellectual property rights of Pho Hung. *Id.* ¶ 34.

28.   Third, the seller of the Banh Mi Brand did not officially exist as of its Brand Acquisition. *Id.* ¶ 35. The seller registered roughly a month after its Brand Acquisition. *Id.*

**4.   Internal Efforts to Preserve Assets and Impose Proper Governance**

11

29.     Starting in 2019, Huy undertook a number of steps to protect, preserve, and recover the assets of the Huy Group.  Mansfield Decl. ¶ 36.

30.     These remedial efforts include, but are not limited to (*id.* ¶ 37):

a.  investigating the Service Contracts and learning of the *post hoc* incorporation of 3 of the 4 Vendors;

b.  forming a Corporate Governance Oversight Sub-Committee empowered to further asset preservation goals;

c.  obtaining financial information from the former CFO of Huy concerning the Onshore Subsidiaries, including their trial balances, monthly management accounts, and the bank statements of Huy Vietnam and Mon Hue;

d.  instructing counsel for both the Onshore Subsidiaries and the Investor Shareholders to change the authorized signatories and demand account information from the Vietnamese banks holding such accounts (collectively, the "**Vietnamese Banks**").  The Vietnamese Banks refused to transition the signatories, as Vietnamese counsel purportedly did not possess the company seal of Huy Vietnam;

e.  appointing a new legal representative of Huy Vietnam;

f.  acquiring the books and records of Huy Vietnam, which it refused to produce; and

g.  commencing various legal proceedings against Nhat, the Nhat Shareholders, and their associates.

31.      The Liquidators continue many of these efforts in conjunction with the Cayman Liquidation.  *Id.* ¶ 38.

D.    **Pending International Litigation Involving the Huy Group**

32.    Throughout the roughly five years of dubious transactions and unilateral actions at the expense of Huy -- arguably each of which constituted *ultra vires* actions in violation of the Amended Shareholder Agreement -- Nhat has been uncooperative, and in particular, has refused to provide relevant financial information or documents to the Investor Shareholders and/or Huy's Board of Directors.  Mansfield Decl. ¶ 39.

33. Nhat's obstruction and recalcitrance includes, but is not limited to (*id.* ¶ 40):

a.    Failing to provide documents to the Huy Board of Directors in relation to the Huy Group's operations;

b.    Declining to investigate the deposits by Mon Hue to 2 Vendors of nearly $10 million prior to the Vendors' incorporation;

c.    Refusing to confirm that deposits returned from the other two Vendors were paid to Mon Hue, the contractual lender;

d.    Alleging that the deposits of approximately $13.5 million paid to the 2 remaining Vendors were recovered, but failing to confirm that the funds were received by Mon Hue;

e.    Evading all efforts of the Huy Board of Directors to impose control over the Huy Group's bank accounts, which in turn impeded the flow of funds from the Onshore Subsidiaries to others in the Huy Group; and

f.    Potentially defrauding the Investor Shareholders by misrepresenting the legitimacy of a bank account maintained by Huy Vietnam in Vietnam.  Nhat alleged that the account held majority of Huy Group's assets with Nhat as the sole signatory.  The Investor Shareholders discovered in September 2019 that

13

the account was fake.

34.    Consequently, the Huy Group filed the following legal actions (collectively, the "**Huy Proceedings**") (Mansfield Decl. ¶ 41):

a.    September 18, 2019: commencing an arbitration proceeding in Hong Kong against Nhat, the Nhat Shareholders, and related parties, alleging breaches of the Amended Shareholders Agreement.

b.    October 11 and 15, 2019: obtaining two presently enforceable Mareva injunctions against Nhat in Hong Kong and Singapore (together, the "**Mareva Injunctions**"), respectively, which prohibits Nhat from removing or transferring any of Nhat's assets from these countries, up to the value of $84.3 million.

c.    October 17, 2019: applying for an injunction against Mon Hue, Nhat, and two of Mon Hue's managers, forbidding, *inter alia*, the Mon Hue managers from leaving Vietnam.  The injunction application also demands the disclosure of banking information *vis a vis* the ten bank accounts maintained by Mon Hue in Vietnam.

d.    November 4, 2019: disseminating a denouement letter to the Ministry of Public Security in Vietnam requesting the opening of a criminal investigation into Nhat and his associates.  The authorities accepted the request and are presently investigating.[5]

**E.    Investments and Transactions in United States Dollars**

35.    As set forth above, the Nhat and his wife held liquid assets through brokerage

---

[5] Although the petitioner(s) in the Huy Legal Proceedings may differ, each petitioner is within the Huy Group or acts on its behalf.

accounts that invested almost entirely using U.S. Dollars. Mansfield Decl. ¶ 42. In addition, they, along with the Huy Group, regularly transacted in U.S. Dollars. *Id.*

36.     First, Nhat maintained at least one brokerage account at Credit Suisse in Singapore (the "**CS Brokerage Account**"). *Id.* ¶ 43. U.S. Dollars is the "reporting currency" of the CS Brokerage Account. *Id.* Specifically, according to an investment report prepared by Credit Suisse detailing the activity of the Account (the "**CS Investment Report**"), as of early 2018, Nhat's held assets with an estimated total market value of roughly $2 million in U.S. Dollars. *Id.*

37.     Notably, as of this time, the assets in the CS Brokerage Account are divided between U.S. Dollars and Hong Kong Dollars, with the U.S. Dollar-denominated assets constituting more than 90 percent of the portfolio. *Id.* ¶ 44. Moreover, according to the CS Investment Report, the CS Brokerage Account included investments in U.S. Dollars in equities of "Sponsored American Deposit Shares." *Id.* The CS Brokerage Account also invested in at least one United States-related mutual fund. *Id.*

38.     The Liquidators' investigation indicates that Nhat actively used the CS Brokerage Account so much that, in August 2018, Credit Suisse notified Nhat of a margin shortfall in the CS Brokerage Account of roughly $100,000 due to certain cash transfers from the CS Brokerage Account, and a diminution in value of his investments attributable in part to a downward fluctuation in the investment market. *Id.* ¶ 45.

39.     As explained by Credit Suisse, the CS Brokerage Account was more susceptible to market fluctuations by virtue of his decision to "leverage … your portfolio previously to transfer some cash[,] as well as to invest[.]" *Id.* Indeed, the CS Investment Report depicts the reduction in value of the CS Brokerage Account from roughly $6 million in September 2017 to $1.8 million in October 2017 resulting from a "fixed advance" to Nhat in excess of $4 million. *Id.* ¶ 46. It is

likely that "fixed advance" from Credit Suisse to Nhat occurred in U.S. Dollars, as this was the currency denominating the near-entirety of the sums in the CS Brokerage Account. *Id.*

40.     Soon after the "fixed advance," Credit Suisse offered Nhat a trio of solutions to avoid a future shortfall. Mansfield Decl. ¶ 47. For instance, Credit Suisse suggested Nhat rectify the shortfall by transferring "at least" $150,000 from "*your account outside Credit Suisse or your wife's account to top up*" the CS Brokerage Account. *Id.*

41.     On August 27, 2019, Nhat sent $800,000 from the CS Brokerage Account to an unknown account. *Id.* Huy's former CFO responded on an email chain with the Credit Suisse payment notification that "[t]his is a payment from Ky's [Nhat's] personal account FYI." *Id.*

42.     In addition, the Nhat Parties and the Onshore Subsidiaries made myriad transactions denominated in U.S. Dollars. Mansfield Decl. ¶ 50. A non-exclusive lists follows: (1) Nhat transferred nearly $800,000 from the CS Brokerage Account to an unknown account; (2) Huy sent roughly $1,822,500 to a Credit Suisse account, later credited in the same amount to the CS Brokerage Account; (3) Huy Hong Kong sent Nhat's wife nearly $130,000; (4) the Intercompany Loans were made in U.S. Dollars; and (5) Huy Vietnam and Mon Hue held money in U.S. Dollars in two accounts at Vietnamese Banks. *Id.*

43.     The Liquidators' investigation further indicates that Nhat and his ex-wife previously co-owned property in California (the "**U.S. Property**"). Mansfield Decl. ¶¶ 51-52. Loans secured by the U.S. Property were issued in U.S. Dollars. *Id.* ¶ 52.

> F.     **The Voluntary Liquidation, Supervision Petition, and Supervision Order**

44.     The courts of the Cayman Islands primarily apply local statutes, subordinate legislation, statutes passed by the parliament of the United Kingdom that have been expressly extended to the Cayman Islands, and principles of common law. *See* Faulkner Decl. ¶¶ 12-16.

45.     The statutes principally governing the liquidation of Cayman Islands companies are set out in Part V of the Companies Act, as supplemented by the CWR and the Foreign Bankruptcy Proceedings (International Cooperation) Rules.[6]  Faulkner Decl. ¶¶ 17-18.

46.     The Grand Court has jurisdiction over the winding up of Cayman Islands companies, and often supervises and adjudicates liquidation proceedings.  Faulkner Decl. ¶ 28.  A Cayman Islands company can be wound up either voluntarily (following the passing of a special resolution, as was the case here initially), compulsorily by the Grand Court, or under the supervision of the Grand Court.  *Id.* ¶ 19.  The Grand Court has broad discretion to make appropriate orders so as to ensure that every party with an interest in the Cayman Liquidation may be heard.[7]  *See* Faulkner Decl. ¶¶ 27-28.

47.     A general principle underlying the Cayman Islands' insolvency regime is that the claims of investors and unsecured creditors within the same class are treated on a *pari passu* basis and subject thereto shall be distributed amongst the members according to their rights and interests in the company.  *Id.* ¶ 31.  This distribution occurs only after taking into account and giving effect to the rights of creditors.  *Id.*

48.     On March 5, 2020, a former Huy director sent a statutory demand to Huy for roughly $12,000.  Mansfield Decl. ¶ 53.  Huy did not satisfy the demand.  *Id.*

49.     Consequently, on October 19, 2020, the members of Huy convened the EGM and unanimously passed the resolution placing Huy into voluntary liquidation (the "**Resolution**").  *Id.* ¶ 54.  All members of Huy received notice of the EGM.  *Id.*

50.     Among other things, the Resolution appointed the Liquidators as the JVLs, and

---

[6] The Companies Act was formerly known as the Companies Law, including at the time of the Supervision Order. *See id.* ¶ 4 n.2.

[7] The restriction on Huy engaging in business in the Cayman Islands by virtue of its status an exempted limited company does not have any practical effect on the Cayman Liquidation.  *Id.* ¶ 52.

approved the submission of an application to the Cayman Court for an order converting the
voluntary liquidation into an official liquidation proceeding.  Mansfield Decl. ¶ 55.

51.    The Companies Act obliges a joint voluntary liquidator to, among other things, file
declarations of solvency with the Cayman Islands Registry of Companies.  Faulkner Decl. ¶ 28.
Where the required declarations of solvency have not been filed within 28 days of the
commencement of the voluntary liquidation -- as is the case here -- a voluntary liquidator must
apply via petition for an order for the liquidation to continue under the supervision of the Grand
Court.  *Id.* ¶¶ 19-20.

52.    If the Grand Court issues an order granting the relief sought in a supervision
petition, the liquidation proceeds as though it was the Grand Court that ordered the winding up of
the company and the official liquidation.  *Id.* ¶ 23.  When supervising a winding up, the Grand
Court must approve the exercise of many powers of the liquidators, while also ensuring that
applicable law of the Cayman Islands is followed in order to afford parity to each interested party.
*See id.* ¶¶ 27-33, 38-40.

53.    On December 11, 2020, the Liquidators filed the Supervision Petition which
requested conversion into an official liquidation.  Mansfield Decl. ¶ 56.  The Supervision Petition
sought express approval to file this Petition in order to further the Cayman Liquidation and more
specifically, to continue the investigation via the requested discovery.  *Id.*

54.    On December 14, 2020, the Cayman Court issued the Supervision Order, placing
Huy into official liquidation and appointing the Liquidators as official liquidators.  *Id.* ¶ 57.[8]

55.    The court-appointed Liquidators are supervised by, and serve as officers and

---

[8] At least one liquidator must reside in the Cayman Islands, which Mr. Mansfield does.  Faulkner Decl. ¶ 53.  The
Companies Act specifically permits appointment of a foreign insolvency practitioner such as Mr. Borrelli as an official
liquidator, as he is jointly appointed with Mr. Mansfield, who is based in the Cayman Islands, and Mr. Borrelli satisfies
other professional requirements. *Id.* ¶ 35.

fiduciaries of, the Grand Court. Faulkner Decl. ¶ 34. Their authority in effect supplants that of Huy's directors, which are displaced as a result of the entry of the Supervision Order and the Liquidators' appointment. *See* Faulkner Decl. ¶ 48.

56.    The Liquidators' powers primarily arise from Schedule 3 of the Companies Act and the Supervision Order. Broadly speaking, the Liquidators are empowered, as agents of the estate of the company, to administer the company's estate for the benefit of creditors and other stakeholders. *See id.* ¶¶ 37-40. Certain powers of the Liquidators require approval of the Grand Court, including, among others, to compensate or make arrangements with creditors, and to dispose of any of Huy's assets. *Id.* ¶ 38.

57.    The Supervision Order by its terms, and without prior approval of the Grand Court, confers upon the Liquidators the specific powers to (1) bring or defend or continue any action or other legal proceeding in the name and on behalf of Huy; (2) adjudicate the claims, liabilities, and debts of Huy; and (3) deploy the remaining assets of Huy to pay disbursements and their own remuneration. Faulkner Decl. ¶ 42. The Supervision Order explicitly empowers the Liquidators to file this Petition and to request discovery relief in the United States "in relation to the assets, affairs, rights, obligations, or liabilities of [the Huy Group], and to take such steps arising in connection therewith that the [Liquidators] may consider appropriate." *Id.* ¶ 43.

58.    In addition, the Companies Act mandates that the Liquidators undertake a variety of administrative functions to discharge their duties as authorized representatives of Huy, including determining whether Huy is solvent, insolvent, or of "doubtful solvency." *Id.* ¶ 44. The solvency determination is particularly significant because it determines who is treated as stakeholders in the Cayman Liquidation, and thus entitled to receive the Liquidators' reports and invitations to meetings held under the auspices of the Cayman Liquidation. *Id.* ¶ 45.

## IV.    THE PROGRESS OF THE CAYMAN LIQUIDATION

59.    Mr. Mansfield resides in the Cayman Islands, where Borrelli Walsh maintains an office used by Mr. Mansfield and his staff to operate many aspects of the Cayman Liquidation. Mansfield Decl. ¶ 59.  For example, the "Contact for Enquiries" for Huy's creditors and other stakeholders is a Borrelli Walsh employee based in the Cayman Islands.  *Id.* ¶ 65.  Mr. Borrelli is a resident of Hong Kong and directs aspects of the Cayman Liquidation from there.  *Id.* ¶ 59.

60.    The Liquidators have taken various steps required under the Companies Act to facilitate an orderly liquidation of Huy and to ensure that all stakeholders are treated fairly and with due consideration.  *Id.* ¶ 60.  The Liquidators changed Huy's registered office address to c/o Borrelli Walsh (Cayman) Limited, Strathvale House, 3rd Floor, 90 North Church Street, George Town, Grand Cayman, Cayman Islands.  *Id.* ¶ 62.

61.    Prior to the Supervision Order, the Liquidators primarily focused on obtaining the books and records of the Huy Group to ascertain the flow of funds of the Outside Investment, and liaising with counsel to obtain the banking records of Nhat and the Onshore Subsidiaries.  Faulkner Decl. ¶ 61.  These efforts continue at present.  *Id.*

62.    The Liquidators have notified the Cayman Islands Registrar of Companies (the "**Cayman Registrar**") of both their appointment as joint voluntary liquidators and also as the Liquidators.  *Id.* ¶ 63.  Shortly after the issuance of the Resolution and the Supervision Order, the Liquidators filed notices with the Cayman Registrar.  *Id.*

63.    The Liquidators announced their appointment as official liquidators of Huy in the Cayman Islands Gazette (the "**Gazette**") on January 4, 2021, the Cayman Compass on January 24, 2021, and the Standard in Hong Kong on January 24, 2021.  *Id.* ¶ 65.  The "Contact for Enquiries" on the Gazette is a Borrelli Walsh employee based in the Cayman Islands.  *Id.*

64.     The Liquidators notified the directors of Huy of their appointment, and requested that the directors deliver the books and records of Huy, as well as execute a declaration of solvency. Mansfield Decl. ¶¶ 67-68.  The Liquidators have not received a declaration of solvency.  As noted above, this leads the Liquidators to believe that Huy is functionally insolvent, or at least of precarious or doubtful solvency.  *Id.* ¶ 68.

65.     The Liquidators retained Cayman Islands counsel to file the Supervision Petition and represent them as the Cayman Liquidation progresses and the Liquidators continue to work with legal advisors previously engaged to pursue Huy's claims in the Huy Legal Proceedings, each of which remain unresolved.  *Id.* ¶¶ 71-72.

66.     The Liquidators appointed themselves or their representatives as the sole or controlling directors of Huy BVI and Huy Hong Kong, which operations are conducted from the Cayman Islands.  *Id.* ¶ 70.

67.     The Liquidators requested documents from the Investor Shareholders in respect of the Huy Proceedings, and obtained statutory and corporate records from Huy, Huy BVI, and Huy Hong Kong from their registered agents and a company secretary, respectively.  Mansfield Decl. ¶ 70.  The Liquidators are in regular contact with the Investor Shareholders, including with respect to creditor claims and the overarching strategy of the Cayman Liquidation.  *Id.* ¶ 71.

68.     The Liquidators engaged Cayman Islands counsel to assist in filing the Supervision Petition and presently employ counsel in the Cayman Islands and the United States to facilitate the effective wind down of Huy, including by filing this Petition.  *Id.* ¶ 73.

69.     Finally, the Liquidators routinely engage with Huy's creditors.  As one example, mere days after issuance of the Resolution, the Liquidators corresponded with a creditor of Huy in part to acquaint the creditor with the liquidation process.  *Id.* ¶ 74.  To that end, the Liquidators

provided a proof of claim and requested supporting documentation. *Id.* ¶ 75. The Liquidators provided similar information to FFP, Huy's former registered office provider and creditor. *Id.*

70.     On January 11, 2021, the Liquidators held the first meeting of the contributories of Huy and provided them with a status update concerning the Cayman Liquidation. *Id.* ¶ 66.

## III.    BASIS FOR RELIEF

### A.     Huy is Eligible for Relief under Section 109(a) of the Bankruptcy Code

71.     Foreign debtors seeking relief under chapter 15 must satisfy the debtor eligibility requirements of 11 U.S.C. § 109(a). *See Olinda Star*, 614 B.R. at 39. Section 109(a) provides that "only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor" under the Bankruptcy Code. *See In re Barnet*, 77 F.3d 238, 246-48 (2d Cir. 2013). Section 109(a) does not require a specific quantum of property in the United States, nor does it indicate when or for how long such property must have a United States *situs*. *See, e.g., In re Berau Capital Res. Pte Ltd.*, 540 B.R. 80, 82 (Bankr. S.D.N.Y. 2015).

72.     Courts regularly hold that attorney retainers deposited in a New York bank account satisfy the "property in the United States" eligibility requirement of section 109(a). *See Olinda Star*, 614 B.R. at 40 (client trust account held by the debtor at law firm in New York satisfies 109(a)); *In re Foreign Econ. Indus. Bank Ltd., "Vneshprombank" Ltd.*, 607 B.R. 160, 171-72 (Bankr. S.D.N.Y. 2019) ("A foreign debtor may satisfy the section 109(a) property requirement by having a retainer."); *In re Octaviar Admin. Pty Ltd.*, 511 B.R. 361, 373-74 (Bankr. S.D.N.Y. 2014) (finding that the debtor "had property in the United States in the form of a retainer [, which] is sufficient to satisfy the requirements of section 109(a) of the Bankruptcy Code").

73.     Here, Huy satisfies section 109(a) because it has property in the United States and in this district in the form of the H&K Retainer. Mansfield Decl. ¶ 91. The H&K Retainer remains in the H&K Account and constitutes Huy's property. *Id.*

**B.**     **The Cayman Liquidation Should be Recognized under Chapter 15**

74.    The Petition should be granted under Chapter 15 because: (1) it concerns a "foreign proceeding"; (2) it was commenced by the Liquidators, who are duly authorized "foreign representatives"; and (3) all the required supporting documentation has been filed.

**1.**     **Legal Standards**

75.    Congress added chapter 15 to the Bankruptcy Code by codifying title VII of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. Pub. L. No. 109-8, § 801 (2005); *see also* 8 COLLIER ON BANKR. ¶ 1501.01 (16th ed.). Chapter 15 encourages "cooperation between the United States and foreign countries with respect to transnational insolvency cases." *Id.*

76.    The Second Circuit holds that "[u]nique to the Bankruptcy Code," Chapter 15 contains a statement of purpose, which is "to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency . . . ." *In re Fairfield Sentry Ltd.*¸ 714 F.3d 127, 132 (2d Cir. 2013) (citing 11 U.S.C § 1501(a)). Chapter 15 and the Model Law "are designed to optimize disposition of international insolvencies by facilitating appropriate access to the court system of a host country (the United States, in the case of Chapter 15) by a representative of an insolvency proceeding pending in a foreign country." *In re B.C.I. Fins. Pty Ltd.*, 583 B.R. 288, 292 (Bankr. S.D.N.Y. 2018) (citations omitted).

77.    Consequently, "Chapter 15 expresses a strong preference for providing assistance to foreign representatives in appropriate circumstances. *That congressional preference is not to be lightly disturbed.*" *In re Platinum Partners Value Arbitrage Fund L.P*, No. 18CV5176 (DLC), 2018 WL 3207119, *4 (S.D.N.Y. June 29, 2018) (emphasis added and footnote omitted).

78.     "Chapter 15 … provides courts with broad, flexible rules to fashion relief that is appropriate to effectuate the objectives of the chapter[.]" *In re Oi S.A.*, 587 B.R. 253, 264 (Bankr. S.D.N.Y. 2018).   To that end, chapter 15 provides the authorized foreign representative with various forms of relief to protect the assets and value of entities in cross-border corporate insolvency proceedings.   Chapter 15 likewise is designed to guarantee orderly, coordinated, and centralized administration of a foreign proceeding, as well as to avert impediments that could disrupt a foreign proceeding from achieving its purposes under applicable foreign law.

### 2.     The Cayman Liquidation is a "Foreign Proceeding"

79.     The Cayman Liquidation satisfies the definition of "foreign proceeding" as required by section 1517(a)(1) of the Bankruptcy Code.   Under Section 101(23) of the Bankruptcy Code, a "foreign proceeding" is defined as "a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation."

80.     Courts in this District apply seven elements to determine if 11 U.S.C. § 101(23) has been satisfied: (1) [the existence] of a proceeding; (2) that is judicial or administrative; (3) that is collective in nature; (4) that is in a foreign country; (5) that is authorized or conducted under a law related to insolvency or the adjustment of debts; (6) in which the debtor's assets and affairs are subject to the control or supervision of a foreign court; and (7) which is for the purposes of reorganization or liquidation."   *In re ENNIA Caribe Holding N.V.*, 594 B.R. 631, 638 (Bankr. S.D.N.Y. 2018).

81.     The Cayman Liquidation satisfies these elements.

82.    First, the Cayman Liquidation is a "proceeding."  The Cayman Liquidation was commenced pursuant to the Companies Act, which pertains to the liquidation of Cayman Islands companies.  *See* Faulkner Decl. ¶¶ 17-23.  The Companies Act and CWR provides that an exempted company's liquidation may be conducted by Liquidators under the supervision of the Cayman Court, and as in this case, is commonly used in conjunction with the liquidation of Cayman Islands companies.  *Id.* ¶¶ 17-23, 27-28.  *See, e.g., In re Ascot Fund*, 603 B.R. 271, 278 (Bankr. S.D.N.Y. 2019); *Ocean Rig*, 570 B.R. at 700.

83.    Second, the Cayman Liquidation is a "judicial or administrative proceeding" because it is subject to the supervision of the Grand Court.  *See* Faulkner Decl. ¶¶ 22-25.  The Grand Court appointed the Liquidators and the Supervision Order, as well as the Companies Act, delineates both the powers that Liquidators may invoke with court sanction and without.  *Id.* ¶¶ 25, 37-43.  *See Ocean Rig*, 570 B.R. at 702 (that the liquidators were "subject to the control of the [Grand] Court" indicates the liquidation in the Cayman Islands is a foreign proceeding).  The Grand Court supervises the Liquidators and has jurisdiction to hear any disputes arising out of the Cayman Liquidation, including with respect to distribution of assets.  Faulkner Decl. ¶ 28.  *See, e.g., Ascot Fund*, 603 B.R. at 278; *Ocean Rig*, 570 B.R. at 700.

84.    Third, the Cayman Liquidation is "collective in nature" in that the liquidation process is binding on all stakeholders.  The Liquidators must consider the interests of all parties and must treat them in an even-handed and fair manner.  *See* Faulkner Decl. ¶¶ 30-31.  The Companies Act requires the Liquidators to convene meetings (including of creditor(s) as necessary) and obligates the Liquidators to distribute assets of Huy *pari passu*.  *See id.* ¶¶ 31, 40.  Moreover, the Companies Act affords aggrieved parties the right to seek court determination on certain issues and to have an opportunity to be heard.  *Id.  See, e.g., Ocean Rig*, 570 B.R. at 701 (a

proceeding commenced under Part V of the Companies Act is a "collective judicial proceeding[]");

*Ascot Fund*, 603 B.R. at 278.

85.     Fourth, the Cayman Liquidation proceeds in the Cayman Islands, a foreign country.

Huy is a domestic company and maintains a registered office there.  Mansfield Decl. ¶¶ 8-9.

86.     Fifth, the Cayman Liquidation proceeds under the auspices of the Companies Act,

which is a statutory scheme "relating to insolvency or adjustment of debt" pursuant to 11 U.S.C. §

101(23).  The Companies Act is such a statute because it is applicable to corporate insolvencies,

including the Cayman Liquidation, and the governs the resolution of any debts owed by or to Huy,

as directed by the Grand Court.  Faulkner Decl. ¶¶ 17-33.  *See Ocean Rig*, 570 B.R. at 701.

87.     Sixth, the assets and affairs of Huy are subject to the control or supervision of the

Grand Court in an official liquidation such as this.  For instance, the Liquidators cannot collect or

realize any assets of Huy without approval of the Grand Court.  Likewise, the Grand Court's

approbation is required before the Liquidators can dispense of any Huy property to an insider such

as Nhat and/or the Nhat Shareholders.  *See, e.g., Ocean Rig*, 570 B.R. at 701.

88.     Finally, the Cayman Liquidation exists "for the purpose of reorganization or

liquidation."  The animating reason for the Cayman Liquidation is, particularly in light of Huy's

doubtful solvency, to administer the winding up of Huy for the benefit of all interested parties by

collecting on its assets, investigating its demise, and satisfying creditors.  *See* Faulkner Decl. ¶¶

38-40.  *See also Ocean Rig*, 570 B.R. at 701.

89.     Importantly, courts in this District have previously held on multiple occasions that

insolvency proceedings under Cayman Islands law qualify as foreign proceedings under chapter

15 of the Bankruptcy Code.  *See, e.g., Ascot Fund*, 603 B.R. at 286 (recognizing official liquidation

proceeding in front of the Grand Court and under the Companies Act); *Ocean Rig*, 570 B.R. at 707

(provisional liquidation in front of Grand Court and under the Companies Act); *In re Suntech Power Holdings Co.*, 520 B.R. 399, 416-420 (Bankr. S.D.N.Y. 2014); *In re Frontera Res. Caucasus Corp.*, No. 19-13418-mew (Bankr. S.D.N.Y. Jan. 21, 2020) (ECF No. 19) (recognition of official liquidation proceeding in the Cayman Islands as a foreign proceeding); *In re Beechwood Re Ltd.*, No. 19-11560 (MG) (Bankr. S.D.N.Y. July 23, 2019) (ECF No. 48) (same); *In re Pinnacle Glob. Partners Fund I Ltd.*, No. 19-11573 (MKV) (Bankr. S.D.N.Y. July 2, 2019) (ECF No. 14) (same); *In re Platinum Partners Value Arbitrage Fund*, No. 16-12282 (MG) (Bankr. S.D.N.Y. Nov. 23, 2016) (ECF No. 27) (official liquidation).

90.     For these reasons, the Cayman Liquidation is a "foreign proceeding" in satisfaction of 11 U.S.C. § 1517(a)(1).

### 3.     The Liquidators are the "Foreign Representatives" of Huy

91.     A chapter 15 case is commenced by the filing of a petition by a "foreign representative." *See* 11 U.S.C. § 1515(a).  The Bankruptcy Code defines a "foreign representative" as "a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding."  11 U.S.C. § 101(24).[9]  For the reasons explained above, the Cayman Liquidation is a "foreign proceeding."

92.     The requirement that a foreign representative be authorized in a foreign proceeding is "not an onerous one." *In re PT Bakrie Telecom Tbk*, 601 B.R. 707, 717 (Bankr. S.D.N.Y. 2019).

93.     The Liquidators are individual persons, appointed and operating as the Liquidators of Huy pursuant to the Companies Act, the CWR, the Resolution, and the Supervision Order.  *See* Faulkner Decl. ¶¶ 11, 27-29, 34-35.  Further, the Supervision Order specifically authorizes the

---

[9] The "foreign representative" can be an individual.  *See Ascot Fund.*¸ 603 B.R. at 278 (citing 11 U.S.C. § 101(41)).

Liquidators to "seek relief under Chapter 15 of the United States Bankruptcy Code."  Mansfield Decl. ¶ 58.  *See* 11 U.S.C. § 1516(a) ("If the decision [commencing the foreign proceeding] … indicates … that the person or body is a foreign representative, the court is entitled to so presume.").  Although he resides in Hong Kong, Mr. Borrelli properly serves as a Liquidator because he serves jointly with Mr. Mansfield, a resident of the Cayman Islands, and he meets the professional qualifications, licensure, and insurance requirements set forth in the Companies Act.

94.    Notably, two decisions in this District recognizing Cayman Islands-based liquidators as "foreign representatives" rely on the explicit authority to file a Chapter 15 proceeding, as permitted here by Section 4 of the Supervision Order.  *See Ascot Fund*, 603 B.R. at 278; *Ocean Rig*, 570 B.R. at 701 (holding that section 101(24) of the Bankruptcy Code was satisfied where foreign representatives submitted a Cayman Islands court order authorizing them to "seek relief under chapter 15 of Title 11 of the United States Bankruptcy Code and to take such steps arising in connection therewith that the [provisional liquidators] may consider appropriate").

95.    For these reasons, the Liquidators squarely fall within the definition of section 101(24) of the Bankruptcy Code.

**4.    The Liquidators Properly Filed this Case**

96.    This Liquidators duly and properly filed this proceeding as required by section 1504 of the Bankruptcy Code by filing the petition pursuant to 11 U.S.C. § 1515(a).

97.    The Petition was accompanied by all documents required by subsections 1515(b) and 1515(c), including the Resolution and Supervision Order.  *See Olinda Star*, 614 B.R. at 45; *see also Ascot Fund*, 603 B.R. at 278 n. 8 (petitioner satisfies 11 U.S.C. § 1515 by providing a copy of the appointment order by the Grand Court, which is "acceptable evidence of the commencement and existence of the Cayman Proceeding and the appointment of the JOLs").

98.    Accordingly, the Liquidators satisfy the requirements set forth in section 1515 of the Bankruptcy Code and the Bankruptcy Rules.  This Chapter 15 case has been properly commenced.

### C.    The Cayman Liquidation is a "Foreign Main Proceeding"

99.    Section 1517(b)(1) of the Bankruptcy Code provides that a foreign proceeding shall be recognized as a "foreign main proceeding" if, among other conditions,[10] it is pending in the county where the debtor has its center of main interests ("**COMI**") as of the date of the petition for recognition.  11 U.S.C. § 1502(4); *see also Fairfield Sentry*, 714 F.3d at 127.[11]  A debtor has only one COMI.  *See In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 458 B.R. 63, 79 (Bankr. S.D.N.Y 2011) ("[E]very entity has a center of main interests.").

100.    Absent evidence to the contrary, a debtor's registered office is presumed to be its COMI.  *See* 11 U.S.C. § 1516(c).  The legislative history indicates that this presumption was "designed to make recognition as simple and expedient as possible" in cases, as here, where COMI is not controversial.  *See* H. Rep. 109-31 pt. 1, at 112-13 (2005).  When determining a debtor's COMI, the Bankruptcy Code provides "considerable but not complete discretion."  *In re Serviços de Petróleo Constellation S.A.*, 600 B.R. 237, 278 (Bankr. S.D.N.Y. 2019) (citation omitted).

101.    Courts in the Second Circuit have developed a list of non-exclusive, but "widely adopted" factors that may be considered when determining COMI:

> (1) the location of the debtor's headquarters; (2) the location of those who actually manage the debtor; (3) the location of the debtor's primary assets; (4) the location of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or (5) the jurisdiction whose law would apply to most disputes.

---

[10] The other conditions are that the foreign representatives applying for recognition is a person or body and that the petition meets the requirement of section 1515 of the Bankruptcy Code.  The Liquidators satisfy these conditions for the reasons previously explained.

[11] Section 1502(1) of the Bankruptcy Court provides that under Chapter 15, "debtor" means "an entity that is the subject of a foreign proceeding."

*Olinda Star*, 614 B.R. at 41 (citation omitted).  These factors present a "helpful guide, but consideration of these is required nor dispositive." *Fairfield Sentry*, 714 F.3d at 137.  The Second Circuit has also emphasized the importance of criteria that are both objective and ascertainable to third parties to determine a debtor's COMI.  *Id.*

102.    An objective determination of COMI results from an examination of factors "in the public domain."  *Id.* (citation omitted).  By examining factors "in the public domain," courts are readily able to determine whether a debtor's COMI is in fact "regular and ascertainable and not easily subject to tactical removal."  *Fairfield Sentry Ltd.*, 714 F.3d at 136-37.

103.    In assessing these factors, a chapter 15 debtor's COMI is determined as of the date that the debtor's chapter 15 petition was filed, without reference to the debtor's historic operational activity.  *See id.* at 137 ("[A] debtor's COMI should be determined based on its activities at or around the time the chapter 15 petition is filed, as the statutory text suggests.").  Where, as here, Huy's activities as of the date of filing the Petition include restructuring activities and administrative functions, the Second Circuit directs that these activities should be considered in the COMI analysis.  *Id.*

104.    Huy is incorporated under the laws of the Cayman Islands, and since its incorporation, maintained a registered office in the Cayman Islands (*see* Mansfield Decl. ¶¶ 8-9), creating a presumption that the Cayman Islands is its center of main interests. 11 U.S.C. § 1516(c). Since the appointment of the Liquidators, the registered office of Huy is c/o Borrelli Walsh (Cayman) Limited, Strathvale House, 3rd Floor, 90 North Church Street, George Town, Grand Cayman, Cayman Islands.  *See* Mansfield Decl. ¶ 62.

105.    The presumption of COMI in Huy's favor is further confirmed by the facts and circumstances set out in the Declarations.

106.    It is objectively ascertainable by third parties that the COMI of Huy is the Cayman Islands.  Huy's headquarters is the Cayman Islands, as it has always been registered in the Cayman Islands.  Mansfield Decl. ¶ 8-9.  The Articles of Association of Huy are to be read in conjunction with, and are subject to, the provisions of the Companies Act, including the applicability of Cayman Islands in the event that Huy is liquidated.  *Id.* ¶ 8.  *See Olinda Star*, 614 B.R. at 41; *Ascot Fund*, 603 B.R. at 279.

107.    Further, the Cayman Liquidation is managed and directed from the Cayman Islands. Mr. Mansfield is located in the Cayman Islands and Mr. Borrelli directs his efforts from Hong Kong to the Cayman Islands.  Mansfield Decl. ¶ 59.  *See Ocean Rig*, 570 B.R. at 704 (recognizing Cayman Islands liquidation even when only one of two liquidators resided there).

108.    The Liquidators' efforts include hiring Cayman Islands and United States counsel to file the Supervision Petition and Petition, appointing Borrelli Walsh as the sole or controlling directors of Huy BVI and Huy Hong Kong, notifying the Huy directors of their appointment and requesting books and records from the same, directing the Huy directors to prepare a declaration of solvency (which has yet to come to fruition), advancing the progress of the Huy Legal Proceedings, transmitting the Resolution and the Supervision Order to the Cayman Registrar, publishing their appointment in the Gazette and another Cayman Islands-based publication, and apprising purported creditor(s) of their rights in the Cayman Liquidation via correspondence with a Cayman Islands-based employee of the Liquidators.  In fact, the Liquidators' contact for enquiries on the Declaration of Solvency is Borrelli Walsh's Cayman Islands office.  *Id.* ¶¶ 59-75.

109.    Courts in the Second Circuit have found activities such as these to establish a debtor's COMI in the Cayman Islands.  *See, e.g., Ascot Fund*, 570 B.R. at 279-281 (the Cayman Islands is a debtor's COMI in part because the debtor's registered office was in the Cayman Islands

31

at the time of appointment of the liquidators and at the time of the commencement of the Chapter

15 case, the articles of association stipulated that the debtor would be wound down pursuant to

Cayman Islands law, and the liquidators "directed and conducted [the debtor's] liquidation from

the Cayman Islands," hired United States and Cayman Islands counsel, notified the Cayman

Islands Registrar of Companies, publicized their appointment in the Cayman Islands' Gazette, and

supervised the updating of records and information); *Ocean Rig*, 570 B.R. at 704-705 (probative

evidence that a debtor's COMI is the Cayman Islands is the hosting of meetings related to the

restructuring in the Cayman Islands, and the provision of public notice of the restructuring);

*Suntech Power*, 520 B.R. at 418 (evidence supporting COMI presumption of the Cayman Islands

includes the appointment order of the Cayman Islands court authorizing the filing of a Chapter 15

proceeding, and the liquidators taking "necessary steps to centralize the administration of the

foreign proceeding" in the Cayman Islands, such as publishing notices to interested parties,

conducting meetings, and changing the debtor's address).

110.    That Huy is a Cayman Islands exempted company, which circumscribes its

business activities in the Cayman Islands, does not rebut the COMI presumption.  The Southern

District of New York addressed the issue directly in *Ocean Rig*.  *See* 570 B.R. at 705-706.  There,

the court held that, irrespective of apparent limitations imposed on a Cayman Islands exempted

company, the Companies Act nevertheless permitted the *management* of an exempted company

from the Cayman Islands.  *Id.*   Since the management of the debtor in *Ocean Rig* served as the

lodestar for purposes of a COMI determination, the limitations imposed on domestic business by

the Companies Act could not rebut the presumption that the debtor's COMI was the Cayman

Islands.  *Id.* at 706.  As discussed *supra*, and for many of the same reasons as in *Ocean Rig*, the

*management* of Huy since the commencement of the Cayman Liquidation occurs pursuant to the Companies Act and under the supervision of the Grand Court.

111.    As is explained elsewhere in this Petition, particularly in relation to the requested discovery relief, there is significant uncertainty regarding the assets of Huy and whether they are collectable.  Whether Huy is solvent also remains an open question.  Mansfield Decl. ¶ 68.  *See Suntech Power*, 520 B.R. at 419 (the opacity and potential worthlessness of debtor's assets clouds the COMI analysis for this factor); *Ascot Fund*, 603 B.R. at 285 (rejecting the argument that the location of the asset is the "key piece of evidence 'ascertainable by third parties.'"); *Ocean Rig*, 570 B.R. at 704 (although existence of assets outside the jurisdiction of liquidation "complicated" the analysis, the prevailing evidence was that the liquidators "have engaged in various activities supporting their COMI in the Cayman Islands for a year").  As set forth above and in the Declarations, the Liquidators have engaged in various activities in the Cayman Islands similar to those cited in favor of recognition of a Cayman Islands insolvency proceeding in *Ascot Fund* and *Ocean Rig*, which minimizes the uncertainty as the location (or existence) of Huy's assets.

112.    In *Fairfield Sentry*, the Second Circuit affirmed a determination that the debtors' COMI was the British Virgin Islands because the debtors' activities at the time of the chapter 15 petition were concluded in connection with the management of the debtors' business under BVI insolvency law.  714 F.3d at 138.  Although the debtors maintained assets on other jurisdictions, the administration of their affairs at the relevant time was orchestrated by the liquidator from the British Virgin Islands.  *Id.* at 139.  The same can be said for the affairs of Huy.

113.    The Liquidators' continue to investigate the location of Huy's creditors and the existence of any other creditors that could be impacted by the Cayman Liquidation.  Mansfield Decl. ¶¶ 74-75.  At present, at least one known purported creditor is FFP, which formerly provided

registered office services to Huy, and appears to be based in the Cayman Islands. *Id.* ¶ 74. Another

purported creditor appears to be based in the United States. *Id.* This factor is neutral and therefore

does not rebut the presumption that Huy's COMI is the Cayman Islands.

114.   Finally, by virtue of its being incorporated in the Cayman Islands, Huy is subject

to its laws, regulations (including the CWR), and its jurisdiction, including with respect to disputes.

Mansfield Decl. ¶ 8. *See Olinda Star*, 614 B.R. at 43-44. Specifically, the Cayman Liquidation is

conducted pursuant to the Companies Act, meaning that the Companies Act would apply to most

disputes. *See* Faulkner Decl. ¶¶ 11, 17-18.

115.   Moreover, Huy operated under the Articles of Association, which was governed by

Companies Act, including as applied to a wind-down of Huy. Mansfield Decl. ¶¶ 8-9. *See Ascot

Fund*, 603 B.R. at 283-284. Furthermore, all of Huy's shareholders chose to invest in a Cayman

Islands-based entity, further pointing to the Cayman Islands being Huy's COMI.[12]

### D.   Alternatively, the Cayman Liquidation is a Foreign Nonmain Proceeding

116.   Although the Liquidators submit that the Cayman Liquidation is a "foreign main

proceeding," in the alternative, the Liquidators seek recognition of the Cayman Liquidation as a

"foreign nonmain proceeding."

117.   Courts will recognize a foreign proceeding as a "foreign nonmain proceeding" if

"the debtor has an establishment within the meaning of section 1502 in the foreign county where

the proceeding is pending." 11 U.S.C. § 1517(b)(2). "Establishment" is defined in Chapter 15 as

"any place of operations where the debtor carries out a nontransitory economic activity." 11 U.S.C.

§ 1502(5); *see Serviços de Petróleo*, 600 B.R. at 277 ("[T]he foreign debtor must establish a degree

---

[12] Although the Huy Group is likely subject to the laws of other jurisdictions (as an example, pursuant to the terms of the Intercompany Loans and the Service Contracts), this does not necessarily weigh against a finding of COMI in the Cayman Islands. *See Olinda Star*, 614 B.R. at 43-44 (weighing this factor in favor of debtor even if it "may be subject to other regulatory regimes").

of stable connections with the jurisdiction to constitute a nontransitory 'establishment.'").  Courts
require proof of more than a "mail-drop presence."  *Id.*

118.    Several factors "contribute to identify an establishment: the economic impact of the
debtor's operations on the market, the maintenance of a 'minimum level of organization' for period
of time, and the objective appearance to creditors whether the debtor has a local presence."
*Millennium Glob.*, 458 B.R. at 85.  A "local effect on the marketplace" is evidenced by, among
other things, engagement of local counsel.  *Id.* at 86-87.  At least one court holds that the presence
of the liquidators is relevant to the determination of whether the debtor has an establishment in
that location.  *Id.* at 86.

119.    The Cayman Islands is not a letter-box jurisdiction for Huy.  The Liquidators direct
much of the Cayman Liquidation from the Cayman Islands, where Mr. Mansfield resides.  The
Liquidators' efforts include hiring Cayman Islands and United States counsel to file the
Supervision Petition and Petition, obtaining corporate and statutory records from Huy, Huy BVI,
and Huy Hong Kong, announcing their appointment in the Gazette, requesting records from the
Investor Shareholders, transmitting the Resolution and the Supervision Order to the Cayman
Registrar, and apprising creditors of their rights in the Cayman Liquidation via correspondence
with a Cayman Islands-based employee of the Liquidators.  Mansfield Decl. ¶¶ 59-75.

120.    For these reasons, in the event the Court concludes that the Cayman Liquidation is
not a foreign main proceeding, the Cayman Liquidation should be recognized as a foreign nonmain
proceeding because Huy maintains an establishment in the Cayman Islands.

**E.    Recognition Would not be Manifestly Contrary to the Public Policy of
the United States**

121.    The Cayman Liquidation should be recognized as a foreign main proceeding, or in
the alternative, a foreign nonmain proceeding, because doing so would not be "manifestly contrary

to the public policy of the United States." 11 U.S.C. § 1506; *see also Fairfield Sentry*, 714 F.3d at 139 ("[T]he word 'manifestly' in international usage restricts the public policy exception to the *most fundamental policies of the United States*.") (emphasis in original). Courts "interpret this exception as a narrow one that should be applied sparingly." *ENNIA Caribe*, 594 B.R. at 640 (citation omitted). The proper focus is on whether a foreign proceeding violates "fundamental standards" of procedural "fairness." *In re Metcalfe & Mansfield Alt. Invs.*, 421 B.R. 685, 697 (Bankr. S.D.N.Y. 2010).

122.    The Cayman Liquidation is clearly not "manifestly contrary to the public policy of the United States." The Companies Act is consistent with approaches to liquidation in other countries, including with respect to the powers of the Liquidators (that can be exercised with or without sanction), the *pari passu* allocation of assets, and the overarching supervision of the Grand Court on the Cayman Liquidation. *See, e.g., In re Millard*, 501 B.R. 644, 651-653 (Bankr. S.D.N.Y. 2013) (refusing to invoke the "public policy" exception to deny recognition of a Cayman Islands liquidation proceeding in part because the liquidators sought to "protect against asset grabbing … which is a traditional basis for the invocation of chapter 15 relief"); *ENNIA Caribe*, 594 B.R. at 640-41 (rejecting "due process concerns" in part because of a "variety of legal procedures" permitted to challenge the foreign proceeding.)

123.    Indeed, recognizing the Cayman Liquidation will assist the orderly administration of Huy's liquidation, consistent with the public policy of the United States that the Bankruptcy Code embodies.

## V.    THE REQUESTED RELIEF SHOULD BE GRANTED

### A.    Multiple Provisions in Chapter 15 Afford the Requested Relief

124.    Section 1521(a) provides in relevant part that "[u]pon recognition of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of this chapter

and to protect the assets of the debtor or the interests of the creditors, the court may, at the request

of the foreign representative, grant any appropriate relief including . . . (4) providing for the

examination of witnesses, the taking of evidence or the delivery of information concerning the

debtor's assets, affairs, rights, obligations or liabilities[.]" *See In re Inversora Eléctrica de Buenos*

*Aires*, 560 B.R. 650, 655 (Bankr. S.D.N.Y. 2016) (in the context of section 1521(a), the

"Bankruptcy Code confers exceedingly broad discretion … that would further the purposes of

chapter 15 and protect the debtor's assets and the interests of creditors"); *see also Millennium*

*Glob.*, 471 B.R. at 346 (citation and footnote omitted) ("Section 1521(a)(4) provides specifically

that the Court may enter an order providing for 'the taking of evidence or the delivery of

information concerning the debtor's assets, affairs, rights, obligations or liabilities.' … By its

terms, this provision enables a Foreign Representative to take broad discovery concerning the

property and affairs of a debtor.").[13]

125.    Courts have recognized that the scope of discovery sought via 11 U.S.C. §

1521(a)(4) is particularly broad when the foreign representative is "gathering information which

will enable them to comply with their duties." *Id.* at 390 (quoting *In re Platinum Partners Value*

*Arbitrage Fund L.P.*, 583 B.R. 803, 821 (Bankr. S.D.N.Y. 2018)).[14]

126.    Pursuant to section 1507, the Court may also grant discretionary relief to provide

additional assistance beyond that permitted under section 1521 to a foreign representative.  11

---

[13] A foreign nonmain proceeding can be "granted nearly identical relief as the relief provided to a main proceeding."
*Serviços de Petróleo*, 600 B.R. at 272.

[14] Discovery sought via 11 U.S.C. § 1521(a)(4) is "not limited to documents in the United States.  Permissible
discovery extends to documents in the possession, custody or control of a party, including documents held by a party's
attorneys or agents" and the court "may order the production of documents from outside the United States."  *See In re*
*Markus*¸ 607 B.R. 379, 389-390 (Bankr. S.D.N.Y. 2019), *vacated sub nom. in part on other grounds*, *Markus v.*
*Rozhkov*, 615 B.R. 679 (Bankr. S.D.N.Y. Apr. 3, 2020).  To that end, "[b]y its nature, chapter 15 involves parties
located outside the United States.  Absent some express language in chapter 15 of any geographical limitation on the
scope of discovery, there is no basis for [a bankruptcy court] … to impose such a limitation." *Id.* at 390.

U.S.C. § 1507(a).  In exercising discretion to grant relief under this section, courts are guided by the standards set forth in section 1507(b), which provides that a court:

> [i]n determining whether to provide additional assistance ... shall consider whether such additional assistance, consistent with the principles of comity, will reasonably assure—(1) just treatment of all holders of claims against or interests in the debtor's property; (2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding; (3) prevention of preferential or fraudulent dispositions of property of the debtor; (4) distribution of proceeds of the debtor's property substantially in accordance with the order prescribed by this title; and (5) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.

127.    Additionally, section 105(a) of the Bankruptcy Code provides that the "court may issue any order, process, or judgment that is necessary to carry out the provisions of this title."

128.    Moreover, relief under section 1521(a) may be granted if the interests of "the creditors and the other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a). While the Bankruptcy Code does not provide a definition of "sufficient protection," the legislative history of section 1522 suggests that this requirement is meant to prevent the rights of United States creditors of the foreign debtor from being "seriously and unjustifiably injur[ed]."  H. Rep. No. 109-31, pt. 1, 109th Cong., 1st Sess. 116 (2005).  As such, courts have "great leeway" in determining whether the rights of all relevant parties are "sufficiently protected" and will generally consider a balancing of competing interests.  *See In re Toft*, 453 B.R. 186, 196 n.11 (Bankr. S.D.N.Y. 2011) ("[A] court should tailor relief balancing the interest of the foreign representative and those affected by the relief.").

129.    The Liquidators submit that all parties in interest are sufficiently protected here, because the requested relief pertains to information directly bearing upon Huy's assets, which are central to the administration of the Cayman Liquidation, and which the Liquidators are unable to obtain from other sources and have been unable to obtain from the Discovery Subjects on a

consensual basis. Further, the Discovery Subjects are not without recourse, and should they determine that the Liquidators' discovery requests are prejudicial to their respective interests, they may file a motion and request relief from this Court.

**B.    The Liquidators are Entitled to Relief because Previous Discovery Efforts have been Actively Thwarted**

130.    The primary assets of Huy are still being investigated. Mansfield Decl. ¶ 76. However, the Liquidators are presently incapable to ascertain with any specificity Huy's financial position and its affairs more generally, nor are they in a position to protect Huy's assets. *Id.* ¶ 77.

131.    Fundamentally, the Liquidators remain largely in the dark given the paucity of available information, which is often actively withheld. *Id.*

132.    As one example, the most recent financial statements of the Huy Group accessible by the Liquidators are: (1) the audited consolidated financial statement for fiscal year end 2016, which records the Huy Group as maintaining net assets of $102.4 million as of 12/31/16; (2) unaudited management accounts of Huy, which lists net assets of $174 million as of 12/30/18; and (3) unaudited management accounts of the Onshore Subsidiaries, which lists net assets of $174 million as of April 30, 2019. *Id.* ¶ 78.

133.    Setting aside that these statements are almost certainly not the most updated version of the Huy Group's financials, the Liquidators do not have sufficient information to assess the reliability and veracity of the statements and accounts. *Id.* ¶ 79.

134.    Moreover, the operations of the Huy Group in recent years appear to be permeated with self-dealing and asset dissipation. *Id.* ¶ 80.

135.    Likely at the direction of Nhat and his associates, the Onshore Subsidiaries engaged in a years-long campaign that likely diverted much of the approximately $75 million invested in Huy via the Outside Investment. Mansfield Decl. ¶ 80. A non-exclusive list -- all without Huy's

consent -- includes Nhat's unilateral conversion of the Intercompany Loans from debt to equity, which both reduced Huy's ownership in Mon Hue and cancelled the repayment obligations of the Onshore Subsidiaries, the execution of the Hanoi and Long An Transactions, the issuance of the Service Contracts which entailed payments to entities created subsequent to the transactions, and the acquisition of trademarks subject to litigation threat and that remain unregistered.  *Id.*

136.    Furthermore, the Liquidators' efforts to investigate these improprieties has been materially hindered by Nhat and the Vietnamese Banks.  *Id.* ¶ 81.

137.    Among other deficiencies, Nhat failed to provide basic information to the Board of Directors of Huy concerning the Huy Group's operations.   Nhat likewise refuses to provide information as to the flow of funds with respect to the Service Contracts, including the beneficiary of two Vendor payments from Mon Hue, and whether the claw back payment from the other Vendors returned to Mon Hue -- the putative lender.  Most critically, Nhat's evasion in response to efforts of the Huy Board of Directors to impose oversight over the Huy Group's bank accounts, could easily shroud the use of Huy Group bank accounts to the benefit of the Nhat Parties.  The Vietnamese Banks have exacerbated many of these issues by rejecting requests to migrate signatory authority for the bank accounts of Huy Vietnam to the rightful parties.  *Id.*

C.    **The Liquidators are Entitled to Relief because the Discovery Subjects Transact Business Using U.S. Dollars**

138.    In these circumstances, in which the Liquidators confront the opacity of the finances of the Huy Group, and the stonewalling of Nhat to reasonable requests, the discovery from the New York Banks is critically important to the orderly wind down of Huy.

139.    The discovery is essential to the Cayman Liquidation because the Liquidators have obtained substantial, though incomplete, evidence that the Huy Group, Nhat, and related parties conducted business in U.S. Dollars, including but not limited to the CS Brokerage Account, which

held millions of dollars in equities in U.S. Dollars, and from which he withdrew millions to further other investment goals. *See* Mansfield Decl. ¶¶ 42-50. The Liquidators are also aware of what appears to be multiple additional accounts at Credit Suisse held by Nhat and/or his wife. *Id.* ¶ 49.

140. Even this *de minimis* discovery foreshadows vital information that is potentially available from the New York Banks. For instance, the Liquidators know that Nhat used the CS Brokerage Account to make a roughly $800,000 transfer. They do not know the beneficiary's identity nor bank account information. Likewise, the Liquidators know that Nhat leveraged the CS Brokerage Account in 2017 by reducing its balance by more than $4 million, but they're unaware of the mechanism and beneficiary of the transfer. The Huy FEIB Account transferred roughly $1.8 million to an account at Credit Suisse. The same amount was later credited to Nhat's CS Brokerage Account. The Liquidators can assume the connection between the accounts, but wire transfer discovery could provide definitive proof. Finally, Credit Suisse, when discussing Nhat's shortfall and with no motivation to be untruthful, referenced additional accounts associated with Nhat and his wife that likely transacted in U.S. Dollars. *See* Mansfield Decl. ¶¶ 87-88.

141. In addition, as explained in the Gluck Declaration, the wire transfers requested by the Liquidators and produced by the New York Banks illustrate the originator of the payment, the beneficiary, the banks facilitating the transfer, and often denote the purpose of the payments in narrative form. *See* Gluck Decl. ¶¶ 5-10. The New York Banks can easily access and routinely produce the records requested in the Petition, and typically do not object. *Id.* ¶¶ 5-6, 11-20.

142. As such, the flow of funds depicted in the wire transfers could be of utmost importance to furthering the progress of the Cayman Liquidation and the instruction in the Supervision Order to discover "the assets, affairs, rights, obligations or liabilities" of Huy, inasmuch as the wire transfers could be the singular source of evidence that Nhat, the Nhat

Shareholders, and others, have misappropriated Huy's assets. The wire transfers produced by the New York Banks will illustrate specific instances of asset dissipation, such as the diversion of Intercompany Loan proceeds subsequent to the conversion into Mon Hue equity, or the failure to repay Mon Hue the deposits returned by the Vendors. *See* Mansfield Decl. ¶¶ 84-88.

143.    Additional examples of helpful information that could be gleaned from discovery from the New York Banks include: (1) determining if the inflated amounts paid for the Hanoi and Long An Transactions were rerouted to another party, such as a Huy insider; (2) identifying account information for the Vendors that received roughly $26 million under the Service Contracts; (3) ascertaining the beneficiaries of the payments from the Brand Acquisitions; and (4) revealing transfers involving the Vietnamese Banks that have thus far refused to relinquish information about the accounts of Huy Vietnam. *Id.* Discovery from the New York Banks could also assist the Liquidators in monitoring compliance with the Injunctions.

144.    Bankruptcy Courts in the Second Circuit routinely order similar relief pursuant to section 1521(a)(4), including specifically for the wire transfer and account information sought in the Petition. *See e.g.*, *Platinum Partners*, 583 B.R. at 811 (authorizing discovery in support of liquidation of Cayman Islands-based funds because its auditors had a "unique set of documents and analyses concerning the Funds' assets, liabilities and financial affairs which would assist the liquidators' investigation and understanding of the Funds' affairs for the two years immediately prior to the Funds' liquidations"); *In re Frontera Caucasus Corp.*, No. 19-13418-mew (Bankr. S.D.N.Y. 2019) (recognizing Cayman Islands proceeding as a foreign main proceeding and authorizing issuance of subpoenas concerning suspect transfers and transactions to debtor's accountants and executives); *In re Archetype Investments Fund SPC Ltd.*, No. 19-11996-shl (Bankr. S.D.N.Y. 2019) (recognizing British Virgin Islands liquidation as a foreign main

proceeding and authorizing issuance of subpoenas to New York Banks); *In re Pinnacle Glob. Partners Fund I Ltd.*, No. 19-11573-rg (Bankr. S.D.N.Y. 2019) (recognizing Cayman Islands liquidation as a foreign main proceeding and authorizing issuance of subpoenas to New York Banks); *In re HiTs Africa Ltd.*, No. 18-11822-mew (Bankr. S.D.N.Y. 2018) (same).

145.    In light of the aim of chapter 15 to "optimize disposition of international insolvencies" by providing foreign representatives appropriate access to the U.S. court system, *see B.C.I. Fins. Pty Ltd.*, 583 B.R. at 292, and the clear, ongoing risk of diminution in value and/or diversion of Huy assets in the United States, the Liquidators respectfully submit that the requested discovery authority is appropriate and necessary "to effectuate the purposes of [chapter 15] and to protect the assets of the debtor."  11 U.S.C. § 1521(a)(4).

146.    In sum, the Liquidators submit that the additional relief requested under section 1521(a)(4) authorizing them to examine witnesses, take evidence and obtain information concerning the Debtor's assets, affairs, rights, obligations and/or liabilities, is necessary and warranted under the circumstances.

## VI.    REQUEST FOR WAIVER OF LOCAL BANKRUPTCY RULE 9013-1(a)

147.    It is respectfully requested that this Court waive and dispense with the requirement set forth in Rule 9013-l(a) of the Local Rules for the United States Bankruptcy Court for the Southern District of New York that any motion filed shall be accompanied by a memorandum of law on the grounds that the relevant authorities in support of the Petition are contained herein.

## VII.    HEARING DATES AND NOTICES

148.    Section 1517(c) of the Bankruptcy Code requires that "[A] petition for recognition of a foreign proceeding shall be decided upon at the earliest possible time."  Bankruptcy Rule 2002 sets forth a twenty-one day notice requirement to parties in interest with certain exceptions to approve the Petition.  If no objections to this Petition are filed by the date ordered for such

objections, the Liquidators request that the Court enter the proposed order recognizing the Cayman Liquidation as a foreign main proceeding without a hearing pursuant to Local Rule 2002-2.

149.    Subsection (q)(1) of Rule 2002 governs notice of a petition for recognition of a foreign proceeding. Contemporaneously herewith, the Debtor has filed the *Motion for Order Specifying Form and Manner of Service of Notice*. The Liquidators propose to provide service and notice of this Petition in accordance with Fed. R. Bankr. P. 2002(q), and the procedures and deadlines specified in the proposed *Order Specifying Form and Manner of Service and Notice*, which the Liquidators respectfully submit constitutes sufficient service and notice of this Petition.

150.    No previous application for the relief requested in this Petition has been made in this or any other court in the United States.

## **CONCLUSION**

WHEREFORE, the Liquidators respectfully request that this Court enter an Order,

substantially in the form of Exhibit 1 to this Petition, granting the relief requested herein and such

other and further relief as may be just and proper.

Dated: February 24, 2021
      New York, New York

                         HOLLAND & KNIGHT LLP

                         /s/ Warren E. Gluck
                         Warren E. Gluck, Esq.
                         Kathleen M. St. John, Esq. (*pro hac vice forthcoming*)
                         Elliot A. Magruder, Esq.
                         HOLLAND & KNIGHT LLP
                         31 West 52nd Street
                         New York, NY 10019
                         Telephone:  212-513-3200
                         Fax: 212-385-9010
                         Warren.Gluck@hklaw.com
                         Kathleen.StJohn@hklaw.com
                         Elliot.Magruder@hklaw.com

                         *Attorneys for the Joint Official Liquidators of Huy*
                         *Vietnam Group Limited (in Official Liquidation)*

## **VERIFICATION**

Pursuant to 28 U.S.C. § 1746, Mitchell Mansfield declares as follows:

Along with Cosimo Borrelli, I am a joint official liquidator of Huy Vietnam Group Limited (in Official Liquidation), a Cayman Islands limited exempted company in official liquidation under the supervision of the Grand Court of the Cayman Islands, Financial Services Division, Cause No. 310 of 2020 (RPJ), pursuant to the Cayman Islands Companies Act (2021 Revision) and the Companies Winding Up Rules, 2018. I have full authority to verify the foregoing *Verified Petition for Recognition of Foreign Insolvency Proceeding and Related Relief* (the **"Verified Petition"**). I have read the Verified Petition, and I am informed and believe that the allegations contained therein are true and accurate to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 23rd day of February, 2021 in _____.

_____
Mitchell Mansfield, in his capacity as a
joint official liquidator of Huy Vietnam
Group Limited (in Official Liquidation)